**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ALLIZON BROOKS a/k/a ALIEON BROOKS, )
             )
   Plaintiff,      )
             )   No. 13-cv-03090
  v.           )
             )   Judge Andrea R. Wood
THE CITY OF CHICAGO, a Municipal  )
Corporation, DAVID STEPNEY, Star # 11508, )
TIMOTHY SCHNOOR, Star # 15401, and )
NOEL SANCHEZ       )
             )
   Defendants.     )

## OPINION AND ORDER

   Plaintiff Allizon Brooks has sued the City of Chicago, Chicago police officers David

Stepney and Timothy Schnoor, and Chicago police commander Noel Sanchez (collectively,

"Defendants") for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. In

his complaint, [1] Plaintiff alleges that on January 18, 2013, Defendants Stepney and Schnoor used

excessive force in restraining and arresting him at a convenience store. He further claims that

after he was arrested and placed in a jail cell, Stepney handcuffed him with his hands behind his

back for an unreasonable period of time and refused to allow him to go to the bathroom.

Defendant Sanchez, who was then a captain but has since been promoted to commander, also

allegedly refused to remove the handcuffs and denied Plaintiff's requests to the use bathroom.

Based on these allegations, Plaintiff asserts claims against Stepney and Schnoor for their use of

excessive force, against Stepney for false arrest, and against Stepney and Sanchez for engaging

in excessive cruelty toward him while he was a pretrial detainee. In anticipation of the scheduled

---

[1] On May 28, 2015, Plaintiff filed a Fourth Amended Complaint. At the final pretrial conference, Plaintiff
confirmed that any claims asserted in prior complaints, but not asserted in the Fourth Amended
Complaint, have been voluntarily dismissed.

jury trial, Plaintiff has filed twenty motions *in limine* (Dkt. No. 83-5), ten of which are contested. The Court granted Plaintiff's uncontested motions at the final pretrial conference.[2] (Dkt. No. 88.) The following constitutes the Court's rulings on the contested motions, as well as on the contested proposed trial exhibits.

## CONTESTED MOTIONS IN LIMINE

Trial courts have broad discretion in ruling on evidentiary issues before trial. *Jenkins v. Chrysler Motors, Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). "Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). As a trial progresses, however, the Court remains free to alter earlier rulings. *Perry*, 733 F.3d 252 (citing *Luce*, 469 U.S. at 41-42). "Furthermore, the court may defer ruling on a motion *in limine* until trial if the parties' arguments 'cannot be evaluated accurately or sufficiently . . . in such a procedural environment.'" *United States v. Mandell*, No. 12 CR 842, 2014 WL 464226, at *2 (N.D. Ill. Feb. 3, 2014) (quoting *Jonasson v. Lutheran Child & Family Servs*, 115 F.3d 436, 440 (7th Cir. 1997)). Moreover, rulings on motions *in limine* are necessarily preliminary and may be altered by the district judge even if nothing unexpected happens at trial. *Luce,* 469 U.S. at 41; *Farfaras v. Citizens Bank & Trust of Chicago,* 433 F.3d 558, 565 (7th Cir. 2006).

## I.     Plaintiff's Motion *in Limine* No. 1

Plaintiff first seeks to bar any references to his 1990 conviction in Texas for aggravated robbery, assault, and bodily injury pursuant to Federal Rules of Evidence 404(b) and 403. In

---

[2] The uncontested motions are Plaintiff's Motions *in Limine* Nos. 2, 3, 4, 6, 9, 12, 14, 15, 16, and 17.

response, Defendants argue that they should be permitted to introduce evidence of the prior conviction and incarceration to show that "Plaintiff has himself been **convicted** of being **actually** dangerous" and that "Plaintiff's claims of emotional distress, humiliation and mental cruelty are exaggerated." (Defs.' Resp. Br. at 2, Dkt. No. 84.)

Federal Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way, but permits the use of such evidence for other purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The party seeking to introduce into evidence material covered by Rule 404(b) must be able to identify a "chain of reasoning that supports the non-propensity purpose for admitting the evidence." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014). In assessing whether evidence is admissible under Rule 404(b), "the district court should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* at 856. Furthermore, "even if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403, which . . . gives the district court discretion to exclude relevant evidence if its probative value is 'substantially outweighed by a danger of . . . unfair prejudice.'" *Id.* at 856-57 (quoting Fed. R. Evid. 403).

In this case, the fact that Plaintiff previously served many years in prison may be relevant to his claim for emotional damages caused by the arrest and detention at issue—such evidence speaks to how the arrest and detention would affect Plaintiff, as opposed to an individual who did not have his experiences. *See Goodman v. Babicz,* No. 09-cv-5954, 2013 WL 146377, at *8

(N.D. Ill. Jan. 14, 2013); *Gribben v. City of Summit*, No. 08-cv-0123, 2010 WL 2928094, at *3 (N.D. Ill. July 20, 2010). If Plaintiff offers evidence regarding the emotional damage he suffered as a result of his incarceration in January 2013, Defendants will be permitted to question Plaintiff regarding the fact that he was incarcerated previously as well as the length and conditions of that prior confinement. To address any potential prejudice, the Court will give the jury a limiting instruction to make clear that they may consider the evidence only as proof of the emotional harm allegedly suffered by Plaintiff as a result of his more recent incarceration. *See Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012). Subject to this limitation, Plaintiff's Motion *in Limine* No. 1 is denied.

While evidence of Plaintiff's prior conviction will be admitted for the limited purpose of establishing the emotional damage he suffered as a result of his incarceration, the Court disagrees with Defendants' contention that Plaintiff's prior conviction should be admitted to show that he has been "convicted of being actually dangerous." Defendants claim the evidence shows that Plaintiff would not have been traumatized by being handcuffed while in a cell with dangerous individuals. This purported justification is unpersuasive. The Court is not aware of "being dangerous" constituting a crime in Texas or elsewhere. And Defendants have proffered no evidence that Plaintiff has ever been convicted for any such offense—having been convicted for aggravated robbery, assault, and bodily injury is not proof that someone is a "dangerous person." Furthermore, the Court finds that the relevance of such evidence to show how a person may feel if handcuffed in a cell with other potentially dangerous individuals is limited, and outweighed by the risk of unfair prejudice.

Moreover, any suggestion that a "convict[ion] of being actually dangerous" indicates that Plaintiff was a "dangerous person" at the time of the incident or is a "dangerous person" now

would fall squarely within Rule 404(b)'s prohibition against propensity evidence. Thus, Defendants will be precluded from using Plaintiff's prior conviction to argue that he is, in fact, dangerous.

The Court further finds that the specific nature of the crime for which Plaintiff *was* convicted—aggravated battery, assault, and bodily injury—has little probative value in this case and carries with it potential for unfair prejudice. For this reason, the Court will entertain a request that any reference to Plaintiff's prior conviction be sanitized to omit any description of the specific crime for which he was convicted. At the final pretrial conference, Plaintiff's counsel expressed skepticism that it would be less prejudicial to Plaintiff for the jury to hear that he was incarcerated for 17 years for an unnamed offense as opposed to hearing that he served 17 years for aggravated battery, assault, and bodily injury. Thus, the Court reserves ruling on the matter of whether Plaintiff's prior conviction should be sanitized until trial.

## II. Plaintiff's Motion *in Limine* No. 5

Plaintiff next seeks to bar any references to the fact that he has not paid all of his medical bills for injuries suffered as a result of the incident at issue. In response, Defendants argue that the fact that Plaintiff has not paid all of his bills is relevant to damages, as the claimed medical expenses have not and may not ever be paid by Plaintiff. The parties have already agreed that Defendants will not argue that the amounts of Plaintiff's medical bills are unreasonable; nor will Defendants object to the admissibility of the bills based on the fact that they are unpaid. The parties have also agreed that Defendants may offer evidence or argument that the treatment Plaintiff sought and received was unnecessary, *i.e.*, that he did not really need the treatment. The question that remains is whether Defendants should be able to argue against recovery of amounts billed to Plaintiff that he may never pay.

In a § 1983 case, a plaintiff may recover compensatory damages for, among other things, the reasonable value of medical care and supplies that the plaintiff reasonably needed and actually received. Defendants argue that they should be permitted to explore at trial whether Plaintiff has made any arrangements that would relieve him of his obligation to pay portions of his medical bills, such as an agreement with a medical provider for him to pay a lesser amount than what is reflected on its bills and have the remainder discharged. At the final pretrial conference, Plaintiff's counsel represented that no such arrangements have been made and that Plaintiff remains obligated to pay his bills in full. This matter was not explored during Plaintiff's deposition, however, and thus there is no evidentiary record.

The Court will allow Defendants to elicit from Plaintiff testimony regarding whether he has entered into any agreements to allow him to satisfy his medical bills without paying the full amount shown on those medical bills. However, Defendants will not be permitted to introduce evidence that Plaintiff has not paid his medical bills or to argue that Plaintiff should not be compensated for his medical bills because he has not yet paid them. Plaintiff's lack of ability to pay his medical bills has limited probative value with respect to the merits of this case, yet the argument proposed by Defendants carries a substantial risk of undue prejudice to the extent it suggests that Plaintiff is the type of person who shirks his responsibilities and tries to dodge his creditors. Accordingly, Plaintiff's Motion *in Limine* No. 5 is denied subject to the limitations described herein.

### III.    Plaintiff's Motion *in Limine* No. 7

Plaintiff also seeks to preclude Defendants from arguing that he went to the convenience store where the arrest occurred for the purpose of interfering with the police investigation of a neighborhood shooting. According to Plaintiff, there is no witness who will testify in support of

Defendants' theory and thus it is nothing more than pure speculation. In response, Defendants contend that they should be able to rely on circumstantial evidence to support their theory and to argue based on inferences they believe can be drawn from the circumstances regarding Plaintiff's presence at the convenience store.

A motion *in limine* should be granted only if the evidence to be excluded is clearly inadmissible for any purpose. If inadmissibility is not clear, "the motion should be denied, or the ruling deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *U.S. v. Rusin,* 889 F. Supp. 1036, 1038 (N.D. Ill. 1995) (quoting *Hawthorne Partners v. AT&T Tech., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (internal quotations omitted). At this point, it is not possible for the Court to determine whether the evidence would support the inference that Defendants desire to argue. For this reason, the Court reserves ruling on Plaintiff's Motion *in Limine* No. 7 until trial.

IV.    **Plaintiff's Motion *in Limine* No. 8**

Plaintiff seeks to bar any reference to evidence that he called or texted people on the day of, prior to, during, or after the incident. Defendants argue that Plaintiff's cell phone activity on the day of the incident is "critical" impeachment evidence. According to Defendants, Plaintiff has testified that he only recalls calling his wife on the day of the incident, yet the evidence will show that (1) Plaintiff made almost 150 calls to persons other than his wife on the day of the incident, (2) in the half-hour preceding the incident, Plaintiff made four calls, none of which were to his wife, and (3) three of Plaintiff's four calls in that preceding half-hour were placed to a number that corresponds to a call to 911 after the shooting from a person claiming to be inside the convenience store.

The Court believes that evidence regarding the reason for Plaintiff's presence at the convenience store and his connection to other persons on the scene the night of the incident are relevant to the issues in the case. Defendants have identified three calls from Plaintiff to a number associated with someone connected to the incident: the calls made from his phone to the phone number that corresponds to the 911 call. Thus, Defendants will be permitted to question Plaintiff regarding those calls. In addition, if Plaintiff testifies that he did not call anyone else on the day of the incident, Defendants may impeach Plaintiff by introducing evidence that he made the other calls evidenced by the phone records. However, Defendants are cautioned that they will not be permitted to argue that calls other than those to the 911 caller have any connection to the incident absent some evidentiary basis for such an assertion. Accordingly, Plaintiff's Motion *in Limine* No. 8 is granted in part and denied in part.

**V.      Plaintiff's Motions *in Limine* Nos. 10 and 11**

Plaintiff seeks to bar reference to the Chicago Police Department's or any other "Use of Force Guidelines" and argues that testimony regarding such issues would be expert testimony governed by Federal Rules of Evidence 702, 703, and 705. Defendants argue that such testimony would not be expert testimony, and that the evidence is relevant to their defense against Plaintiff's claim of excessive force because the evidence is pertinent to the officers' experiences and to their decisions and actions during the incident.

Police department policies, procedures, and general orders are presumptively irrelevant in determining whether a police officer's use of force is reasonable in the context of a constitutional claim under the Fourth Amendment. *Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006).[3] But such materials are not barred for all purposes and may be admissible if relevant to

---

[3] In *Thompson*, the Seventh Circuit held that evidence that police officers violated departmental regulations is immaterial to whether those officers committed a constitutional violation. 472 F.3d at 454. It would seem to be an

other issues, including state law claims and claims for punitive damages. *See Scott v. City of Chicago,* No. 07-cv-3684, 2010 WL 3034188, at \*1-2 (N.D. Ill. Jul. 27, 2010). In this case, whether Defendants considered the Department's "Use of Force Guidelines" in determining how to handle their encounter with Plaintiff and whether Defendants believed that their actions were consistent with those guidelines is relevant at a minimum to Plaintiff's claim for punitive damages. Contrary to Plaintiff's position, such testimony by Defendants would not constitute expert testimony governed by Federal Rules of Evidence 702, 703, and 705. Defendants would not be providing expert opinions regarding whether their use of force was justified; they would be testifying regarding their own knowledge and state of mind.

Defendants' testimony would not constitute expert opinions even if they did discuss the specifics of the policies at issue, so long as their testimony was limited to their own experience and training. In *Clarett v. Roberts*, 657 F.3d 664 (7th Cir. 2011), the Seventh Circuit considered whether an officer's testimony regarding his experience and training with a taser (in particular, that it would be impossible to discharge one multiple times just one second apart) was admissible. The Court found that it was, and stated that the officer "did not give technical testimony about how the Taser's internal memory operated or how data was uploaded from the Taser to the police department's central computer—subjects that no doubt would have required some form of properly qualified expert testimony under Rule 702. Rather, his testimony was limited to his own experience in operating the Taser. He explained the steps required to fire the Taser in order to illustrate the incongruity of rapid, successive deployments only one second apart. Neither this testimony, nor his discussion of the Taser printout, was couched in terms of an expert opinion." *Clarett v. Roberts*, 657 F.3d 664, 671 (7th Cir. 2011). Here, similarly, testimony

---

obvious corollary that evidence police officers complied with department regulations is also immaterial to the existence of a constitutional violation.

regarding the officers' own experiences and training, including any related "Use of Force Guidelines," would not constitute expert testimony.

Accordingly, Plaintiff's Motions *in Limine* Nos. 10 and 11 are denied. Defendants will be permitted to testify regarding their knowledge and familiarity with the guidelines and how that impacted their actions on the night in question. The Court will give the jury a limiting instruction to make clear that compliance (or non-compliance) with the police department's "Use of Force Guidelines" is immaterial to whether a constitutional violation occurred. *See Thompson*, 472 F.3d at 454.

## VI.     **Plaintiff's Motion *in Limine* No. 13**

Plaintiff next seeks to bar Defendants from asking Plaintiff if he, his wife, or any other family member receives food stamps, unemployment benefits, or other public assistance. Defendants argue that the financial situation of Plaintiff and his household is relevant to his motivation for filing suit and to witness bias. Defendants may argue that Plaintiff was motivated to bring this lawsuit by financial need and a desire to obtain money, but the details regarding his financial condition and reliance on public assistance have limited probative value. References to Plaintiff's receipt of food stamps, unemployment benefits, and public assistance serve little purpose other than to arouse the jurors' biases, prejudices, and sympathies with respect to such public programs and those who utilize them. In short, the probative value of this evidence is outweighed by the risk of unfair prejudice. Accordingly, Plaintiff's Motion *in Limine* No. 13 is granted.

## VII.    **Plaintiff's Motion *in Limine* No. 18**

Plaintiff also seeks to bar Defendants from asking whether he knows any of the other people who were in the convenience store at the time of the incident as shown in a surveillance

video. Whether Plaintiff knew the people in the convenience store is a basic foundational question that is clearly relevant to the issues in the case, including Plaintiff's state of mind at the time of the incident. To the extent Plaintiff denies knowing anyone in the store other than the cashier, Defendants will be able to impeach that testimony through evidence that Plaintiff did, in fact, know someone else in the store. Accordingly, Plaintiff's Motion *in Limine* No. 18 is denied.

**VIII.  Plaintiff's Motion *in Limine* No. 19**

Plaintiff seeks to bar Defendants from asking whether he posted the surveillance video depicting the incident on youtube or any other media. Defendants argue that Plaintiff's posting of the video and television interviews about the incident are relevant to his motivation for filing suit. The Court notes that Brooks filed this lawsuit before he posted the video and gave the referenced interviews (*see* Defs.' Resp. Br. at 10), such that the connection between the decision to file the lawsuit and the decision to discuss the matter publicly is unclear. In any case, the Court finds that evidence of the youtube posting and television interviews is at best minimally relevant to the issues in the case and that any probative value would be outweighed by the unfair prejudice to Plaintiff. Accordingly, Plaintiff's Motion *in Limine* No. 19 is granted.

**IX.  Plaintiff's Motion *in Limine* No. 20**

Finally, Plaintiff seeks to bar any reference to his failure to cooperate with the Independent Police Review Authority ("IPRA") investigation regarding the incident. Defendants argue that Plaintiff's decision not to participate in the investigation demonstrates that he was "motivated by the potential financial gains presented by filing a lawsuit based on false accusations." (Defs. Resp. Br. at 11, Dkt. No. 84.) The Court fails to see the connection. Plaintiff was not required to participate in the IPRA investigation. Indeed, Plaintiff's counsel has pointed out that, at the time Plaintiff was approached to give a statement to IPRA, he was still facing

criminal charges arising from his actions during the incident and any statement he gave could have been used against him for that prosecution. Moreover, evidence regarding the investigation would only serve to confuse the jury and invite speculation about what information was gathered by IPRA and what its conclusions might have been. In sum, the Court finds that evidence regarding Plaintiff's decision not to participate in the IPRA investigation is, at best, minimally relevant to the issues in the case and that any probative value would be outweighed by the prejudice to Plaintiff. Accordingly, Plaintiff's Motion *in Limine* No. 20 is granted.

## CONTESTED TRIAL EXHIBITS

Plaintiff also objects to several of Defendants' proffered trial exhibits. The Court rules on the contested exhibits as follows:

- Plaintiff's objections to Defendants' Exhibit Nos. 13 and 18 are overruled for the reasons stated above in connection with the Court's ruling on Plaintiff's Motion *in Limine* No. 10. Defendants' knowledge and familiarity with police department guidelines regarding the use of force is relevant to their state of mind and the issue of punitive damages.

- Plaintiff's objections to Defendants' Exhibit Nos. 14 - 17 and 19 are sustained, as Defendants have not shown the relevance of police department policies and guidelines regarding the use and discharge of tasers, tactical response reports, and court appearances. The Court will revisit the issue as appropriate based upon how the evidence develops at trial.

- Plaintiff's objections to Defendants' Exhibit Nos. 20 and 21 are overruled for the reasons stated above in connection with the Court's ruling on Plaintiff's Motion *in Limine* No. 8. The exhibits are admissible to the extent they evidence calls or text messages between Plaintiff and other individuals involved in Plaintiff's arrest, or the neighborhood shooting and immediately preceded the arrest, or for impeachment purposes.

- Plaintiff's objection to Defendants' Exhibit No. 24 is overruled. The exhibit is admissible for the limited purpose of challenging Plaintiff's credibility regarding his allegations of what occurred during the incident and may be used for impeachment.

- Plaintiff's objection to Defendants' Exhibit No. 27 is sustained. Defendant has not established that the exhibit is proper impeachment evidence.

- The Court reserves ruling on Plaintiff's objections to Defendants' Exhibit Nos. 28 - 39. Thus far, Defendants have not shown the relevance of radio calls to which the officers

involved in the incident were not parties. As this issue was not directly addressed during the Final Pretrial Conference, the Court will allow the parties an opportunity to put forth arguments regarding the admissibility of these exhibits at trial.

- Plaintiff's objection to Defendants' Exhibit No. 40 is overruled. The exhibit is admissible for the non-hearsay purpose of showing the responding officers' state of mind. Prior to the introduction of the evidence, the Court will address with the parties whether the recordings are to be played in full or as excerpts.

ENTERED:

Dated: June 5, 2015

Andrea R. Wood
United States District Judge